UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Tony Dejuan Jackson, | Case No. 21-cv-1777 (SRN/LIB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| FindJodi.com, Inc. et al., | |
| Defendants. | |

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment made in accordance with the provision of 28 U.S.C. § 636, and upon Plaintiff Tony Dejuan Jackson's filings which are titled as follows: "Prisoner Civil Rights Violation, Injunctive, Declaratory Compensatory Damages Requested Relief" (hereinafter "Complaint"), [Docket No. 1]; Application to Proceed in District Court Without Prepaying Fees or Costs (hereinafter "IFP Application"), [Docket No. 3]; "Plaintiff Motion Asking the Court to [Issue an] Order Requiring the United States Marshal to Serve the Summons and Complaint" (hereinafter "Service Motion"), [Docket No. 5]; "Plaintiff Motion Requesting Documents be sent free of charge" (hereinafter "Copy Motion"), [Docket No. 7]; "Motion for Appointment Counsel" (hereinafter "Counsel Motion"), [Docket No. 9]; and "Plaintiff Motion Requesting a Court Order That Adopts The Relation Back Amendments Regarding Previously Filed Or Prior Pleadings" (hereinafter "Relation-Back Motion"). [Docket No. 10].

For the following reasons, the undersigned recommends Plaintiff's claims against Defendant "United States District Court, District of Minnesota," be **DISMISSED with prejudice**, and the undersigned further recommends that the remainder of Plaintiff's claims be **DISMISSED without prejudice**. Based on this recommendation of dismissal, the undersigned also recommends

that Plaintiff's IFP Application, Service Motion, Copy Motion, Counsel Motion, and Relation-Back Motion be **DENIED as moot**.

I.   Background

Plaintiff is currently incarcerated at the Minnesota Correctional Facility in Stillwater, Minnesota. (See, e.g., Compl. [Docket No. 1] at 6). The Minnesota Court of Appeals has summarized Plaintiff's relevant criminal history as follows:

> In May 1997, [Plaintiff] sexually assaulted three people in Ramsey, Washington, and Dakota counties. He was convicted of crimes in all three counties.
>
> In Washington County, [Plaintiff] was convicted of first-degree burglary and first-degree criminal sexual conduct. The Washington County District Court sentenced [Plaintiff] to 182 months in prison, based on both aggravating factors and a finding that [Plaintiff] was a patterned sex offender under Minn. Stat. § 609.1352 (1996).
>
> [Plaintiff] was subsequently convicted in Ramsey County of first-degree criminal sexual conduct under Minn. Stat. § 609.342, subd. 1(e)(i) (1996). Because the Washington County District Court had previously found [Plaintiff] to be a patterned sex offender, the Ramsey County District Court imposed a mandatory life sentence under Minn. Stat. § 609.346, subd. 2a(a) (1996).

State v. Jackson, No. A16-1013, 2017 WL 1053108, at *1 (Minn. Ct. App. Mar. 20, 2017).[1] The same decision notes that Plaintiff "has frequently appealed both of these convictions and sentences." Id. As best as the Court can tell, none of these appeals has succeeded.[2]

---

[1] In the Dakota County action, a jury convicted Plaintiff in January 1999 of three counts of first-degree criminal sexual conduct and one count of first-degree burglary. See, State v. Jackson, No. 19-K1-97-2857, Register of Actions (Minn. Dist. Ct.). As the Court understands the state-court records, the Dakota County trial court later sentenced Plaintiff to 360 months imprisonment for one of the criminal-sexual-conduct counts and 48 months of imprisonment on the burglary count. See, Id. The Dakota County court applied these sentences consecutively, both to each other and to Plaintiff's sentences in the cases from Ramsey County and Washington County. See, Id.; see also, e.g., State v. Jackson, No. 19-K1-97-2857, Warrant of Commitment at 1–2 (Minn. Dist. Ct. Oct. 7, 2020). The materials cited here from Plaintiff's Dakota County case are not attached to any filings in this action. They are publicly accessible court records, however, so the Court may take judicial notice of them. See, e.g., Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007); Soeby v. FCI-Waseca, No. 21-cv-1472 (ECT/BRT), 2021 WL 3887251, at *1 (D. Minn. Aug. 4, 2021) (citing cases), report and recommendation adopted, 2021 WL 3885617 (D. Minn. Aug. 31, 2021).

[2] See, e.g., Jackson, 2017 WL 1053108, at *1; Jackson v. State, No. A09-1965, 2010 WL 2162602, at *3 (Minn. Ct. App. June 1, 2010); Jackson v. State, No. A09-0344, 2009 WL 2596064, at *1 (Minn. Ct. App. Aug. 25, 2009); State v. Jackson, No. CX-98-1837, 1999 WL 688674, at *1 (Minn. Ct. App. Sept. 7, 1999); see also Jackson v. Dingle, No. 4-cv-0019 (DSD/SRN), 2005 WL 1270594, at *2 (D. Minn. May 25, 2005) (dismissing § 2254 petition with prejudice).

## II. The Present Action

Plaintiff initiated this action by filing his Complaint. [Docket No. 1]. Plaintiff's Complaint is 94 pages long; alongside it, Plaintiff simultaneously filed over 200 pages of purported exhibits. (See Plf.'s Exs. in Support of Civil Compl. (hereinafter "Complaint Exhibits") [Docket No. 2]). Although the caption of the Complaint is unclear, Plaintiff appears to name almost two dozen people and entities as Defendants. (See, Compl. [Docket No. 1] at 1.) Plaintiff's Complaint is not easily summarized in any concise manner because the Complaint traverses various, seemingly unrelated courses of conduct.[3]

First, the Complaint discusses Plaintiff's theory that a public website—FindJodi.com—and various site-associated individuals have improperly referred to him as a suspect in the unsolved 1995 disappearance of Jodi Huisentruit. (See, e.g., Id. at 7–19, 22, 31–34, 36, 39–45, 49). Second, the Complaint repeatedly refers to Plaintiff's belief that he has been "incarcerated after the legal authority to hold him has [expired]." (See, Id. at 35; see also, e.g., Id. at 33, 38, 48, 74). Plaintiff believes that his continued incarceration is based on the rumors about his involvement in Huisentruit's disappearance. (See, Id. at 35; see also, e.g., Id. at 33, 38, 48, 74). Third, Plaintiff repeatedly suggests that his conditions of confinement do not "bear some reasonable relation to supervision and treatment," and thus violate his constitutional rights. (See, Id. at 34; see also, e.g., Id. at 37, 62, 93). These impermissible conditions, he asserts, include interferences with his right of access to the courts. (See, e.g., Id. at 58, 64–65). Fourth, Plaintiff suggests that various judicial

---

[3] To the extent that Plaintiff wants the Court to review the Complaint Exhibits to determine what causes of action might apply to various Defendants, the Court declines the invitation. It is Plaintiff's job—not the Court's—to craft his Complaint. The Court has not looked—and will not look—through the Complaint Exhibits to find relevant allegations or suggest possible causes of action. See, e.g., Smith v. Hennepin Cty. Fam. Ct., No. 19-cv-3100 (DSD/BRT), 2020 WL 1930555, at *1 n.2 (D. Minn. Mar. 24, 2020) (declining to look through exhibits "to determine what causes of action might apply to various Defendants" (citing cases)), report and recommendation adopted, 2020 WL 1923219 (D. Minn. Apr. 21, 2020); Murrin v. Avidigm Capital Grp., Inc., No. 7-cv-1295 (PJS/RLE), 2008 WL 11463468, at *10 (D. Minn. Sept. 5, 2008) (declining to look through documents to find "evidence that might establish a prima facie case" for certain claims (citing cases)).

3

decisions addressing his past habeas matters and civil actions have interfered with his right of access to the courts. (See, e.g., Id. at 58–65, 67, 85). Lastly, Plaintiff raises numerous perceived issues with the conduct of Melvin Welch, a lawyer who ostensibly represented Plaintiff in one or more prior criminal matters. (See, Id. at 79–85).

Plaintiff purports to raise numerous causes of action. In particular, he claims that various Defendants have violated his constitutional rights, that he has been slandered, and that Defendants are involved in ongoing violations of the RICO Act. (See, e.g., Id. at 19–20, 33–34, 36). He suggests that all the conduct discussed in the Complaint is part of a vast conspiracy, explicitly alleging that "[a]t all times mentioned in this complaint, each Defendant was the agent of the other and was acting in the course and scope of this agency, and all acts alleged to have been committed by any one of them was committed on behalf of every other Defendant." (Id. at 92; see also, e.g., Id. at 50).

As relief, Plaintiff demands numerous forms of injunctive relief, various declaratory judgments, compensatory damages, punitive damages, costs, "reasonable fees[,] and litigation expenses." (Id. at 94.)

Along with his Complaint, Plaintiff filed his IFP Application. [Docket No. 3]. As noted above, since initiating this action, Plaintiff has filed numerous motions making various requests of the Court. On August 27, 2021, Plaintiff filed his Service Motion. (See, Service Mot. [Docket No. 5] at 1). This Service Motion asks the Court to order the U.S. Marshal Service to serve Defendants with summons and a copy of the Complaint. (See, Id. at 2). Plaintiff filed his Copy Motion on September 7, 2021. [Docket No. 7]. In his Copy Motion, Plaintiff seeks one free file-stamped copy of the Complaint and the Complaint Exhibits. (See, Id. at 2). On September 15, 2021, Plaintiff filed his Counsel Motion, [Docket No. 9], which asks the Court to appoint counsel for Plaintiff in

4

this action. Finally, on September 22, 2021, Plaintiff submitted the Relation-Back Motion. [Docket No. 10]. This Relation-Back Motion asks the Court to "adopt[] the relation back amendments regarding prior pleadings of unconstitutional practices alleged in" earlier cases Plaintiff has filed in this District. (See, Id.)

### III.    Discussion

As observed above, Plaintiff is presently incarcerated at MCF Stillwater, and therefore, Plaintiff's Complaint is subject to screening under 28 U.S.C. § 1915A. Pursuant to this statutory review, the Court is empowered to dismissal any complaint or portion thereof which is frivolous, malicious, fails to state of claim upon which relief may be granted, or seeks relief from a defendant who is immune from such relief.

The Court's review of Plaintiff's Complaint finds several independent reasons which support the dismissal of this action. The Court will here highlight some of the reasons supporting dismissal; this present discussion is not a complete list of all the Complaint's failings.

####    A.    Claims Against "United States District Court, District of Minnesota"

As a threshold point, the Court will address Plaintiff's claims against the Defendant listed as "United States District Court, District of Minnesota." These claims are against the District of Minnesota itself; Plaintiff does not name any individual judges. (See Compl. [Docket No. 1] at 1, 85).[4]

Plaintiff's allegations involving the District largely related to the actions the District of Minnesota has previously taken in Plaintiff's other cases in this District. For example, Plaintiff suggests that a Court in this District inappropriately dismissed an earlier habeas action he filed. (See, Id. at 60–63). Plaintiff also claims that he has been "incarcerated after the legal authority to

---

[4] Plaintiff states that he is suing the District in its "Individual & Official Capacity," but the District is not an individual, so it has no individual capacity.

5

hold him has [expired] due to Continued Obstruction of Justice by the Defendants [and] Denial of Access to the Minnesota State and Federal District Courts . . . ." (Id. at 35). Plaintiff generically asserts that a Court in this District improperly "impeded" him from bringing a "non-frivolous claim regarding [him] being denied Access to the Courts" by improperly applying Heck v. Humphrey, 512 U.S. 477 (1994), to dismiss his earlier action. (Id. at 64–65). Plaintiff further claims that Judges in this District "have continued to frustrate and [impede his] Civil Actions Challenging [his] conditions of Confinement by refusing to follow the regulations, Laws and court policies . . . ." (Id. at 66). Plaintiff contends that District "Practices regarding [Plaintiff's] Efforts to use the Courts to Seek Appropriate remedies with respect to [Plaintiff's] Prison Conditions . . . [have] unjustifiably obstructed the availability of Professional representation and other aspects of [Plaintiff's] Rights to Access to the Courts . . . ." (Id. at 67). Plaintiff conclusorily states that the District "[i]s part of a conspiracy to substantially interfere with the administration of Justice regarding violating [Plaintiff's] Constitutional Rights to Due Process and Fair Access to the Courts by Obstructing and impeding the Administration of Justice regarding the Investigation, prosecution, and sentencing of [Plaintiff] regarding the Criminal Offenses which occurred in May of 1997 in Washington County Minnesota, Ramsey County Minnesota, Dakota County Minnesota[.]" (Id. at 85).

These claims suffer from several dispositive problems, but for present purposes, the discussion of one issue suffices. Under the doctrine of sovereign immunity, the United States generally may not be sued without its consent. This immunity applies not just to claims against the United States itself, but also to claims against federal agencies and instrumentalities. See, e.g., F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994) (citing cases); Compart's Boar Store, Inc. v. United States, 829 F.3d 600, 604 (8th Cir. 2016) (citing Meyer). District Courts, as part of the federal

6

government's judicial branch, are entitled to the federal government's sovereign immunity. See, e.g., Covarrubias v. U.S. Dist. Ct. for Dist. of Nebraska, No. 18-cv-0283 (RGK), 2019 WL 2420286, at *2 (D. Neb. June 10, 2019) (citing Mader v. United States, 654 F.3d 794, 797 (8th Cir. 2011)).[5] As a result, sovereign immunity bars Plaintiff's claims against the District unless some sort of federal government consent exists. Nothing in the Complaint points to any applicable consent, nor is the Court aware of any. Even liberally construing Plaintiff's Complaint in his favor, Plaintiff has failed to allege any factual basis upon which this Court could reasonably conclude that the District of Minnesota has waived its sovereign immunity.[6]

The undersigned therefore recommends Plaintiff's claims against the United States District Court for the District of Minnesota be **DISMISSED with prejudice**.

### B. Plaintiff's Remaining Claims

As for the rest of the Complaint, the Court concludes that it suffers from fatal deficiencies, including misjoinder and a failure to comply with applicable pleading requirements. Under Federal Rule of Civil Procedure 18(a), "[a] party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." This permissive rule allows a plaintiff to "join as many claims as he or she has against an opposing party." Headley v. Bacon, 828 F.2d 1272, 1275 (8th Cir. 1987); Amen El v. Schnell, No. 20-cv-1327 (DSD/ECW), 2021 WL

---

[5] See also, e.g., Tucker v. U.S. Ct. of Appeals for Tenth Cir., 815 F. App'x 292, 294 (10th Cir. 2020) (quoting Meyer); Rivera v. US Dist. Ct. SDNY, No. 21-cv-6056 (LTS), 2021 WL 3605037, at *2 (S.D.N.Y. July 26, 2021); McElroy v. U.S. Dist. Ct. for S. Dist. of Georgia, No. 21-cv-0196 (RSB/CLR), 2021 WL 3439409, at *2 (S.D. Ga. July 12, 2021) (citing Rutherford v. Dist. Ct., 425 F. App'x 400, 400 (5th Cir. 2011)), report and recommendation adopted, 2021 WL 3438622 (S.D. Ga. Aug. 5, 2021); Nottingham v. U.S. Dist. Ct. for Middle Dist. of Pennsylvania, No. 21-cv-0396 (CCC), 2021 WL 1313526, at *3 (M.D. Pa. Apr. 8, 2021).

[6] While the Court is required to construe the content of a pro se complaint liberally, a pro se plaintiff is nevertheless bound by applicable procedural and substantive law. See, Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

509280, at *2 (D. Minn. Feb. 11, 2021) (quoting Headley), report and recommendation adopted, 2021 WL 880679 (D. Minn. Mar. 9, 2021).

Once a plaintiff joins multiple defendants, however, he or she must also satisfy Rule 20(a)(2). Under Rule 20(a)(2), "[p]ersons . . . may be joined in one action as defendants if (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." See, e.g., In re Prempro Prod. Liab. Litig., 591 F.3d 613, 622 (8th Cir. 2010) (quoting Rule 20(a)(2)); Blevins v. Pearson, No. 18-cv-2270 (DSD/DTS), 2018 WL 6814183, at *2 (D. Minn. Nov. 30, 2018) (same), report and recommendation adopted, 2018 WL 6807391 (D. Minn. Dec. 27, 2018). "Despite the broad language of Rule 18(a)," one treatise explains, "[a] plaintiff may join multiple defendants in a single action only if [the] plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." 7 Mary Kay Kane, Federal Practice & Procedure § 1655 (3d ed. Westlaw, updated April 2021); see also, George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) ("[M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits . . . .").

Rule 20(a)(2) is especially relevant in prisoner litigation contexts. Making plaintiffs put unrelated defendants into different lawsuits avoids the "morass produced by multi-claim, multi-defendant suits . . . ." Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011) (quoting George, 507 F.3d at 607 (internal quotation marks omitted)); see also, Blevins, 2018 WL 6814183, at *2 (quoting Owens). In addition, the Prison Litigation Reform Act ("PLRA") requires that prisoners

8

pay filing fees for all civil actions, and prisoners can only file a certain number of meritless lawsuits (or appeals) before being generally barred from seeking in forma pauperis status. See, 28 U.S.C. § 1915(b)(1), (g).[7] The upshot is that a prisoner who might otherwise have to pay multiple filing fees for multiple lawsuits might try to avoid that outcome by combining unrelated claims against unrelated defendants into a single action. See, Owens, 635 F.3d at 952; Blevins, 2018 WL 6814183, at *2 (quoting Owens).

The summary of Plaintiff's Complaint above illustrates that the Complaint contains several distinct sets of claims, each involving different subject matters. To take but one example, there is simply no plausible connection between the claims Plaintiff seeks to bring against those Defendants behind the FindJodi.com website and his claims against his former defense attorney.

Rule 18(a) would permit Plaintiff's suit if he had named only one defendant and said defendant were truly involved in all of his various sorts of claims. But that is not the circumstance of the present case. Instead, Plaintiff names multiple Defendants, which demands that the Complaint also comply with Rule 20(a)(2). Plaintiff's Complaint plainly fails to comply with Rule 20. Plaintiff has not asserted rights to relief against each Defendant that all arise from the same "transaction, occurrence, or series of transactions or occurrences."[8]

Plaintiff's Complaint exemplifies the sort of quagmire that Rule 20(a)(2) targets. Furthermore, letting Plaintiff bring (for practical purposes) multiple actions in one would let him

---

[7] Plaintiff is just such a "three-strikes" prisoner litigant. See, e.g., Jackson v. Dayton, No. 17-cv-0880 (WMW/TNL), 2018 WL 3696600, at *2 (D. Minn. Aug. 3, 2018).

[8] Of course, the Court is aware that Plaintiff alleges a wide-ranging conspiracy encompassing all the named Defendants. (See, e.g., Compl. [Docket No. 1] at 31). But as the Supreme Court has emphasized, to survive a motion to dismiss, it is not enough for a plaintiff to simply write down an allegation; a pleading's factual allegations must suggest that the relevant allegation is plausible. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Warmington v. Bd. of Regents of Univ. of Minnesota, 998 F.3d 789, 795 (8th Cir. 2021) (quoting Iqbal). A conspiracy along the lines proposed in the Complaint is highly implausible, and the Complaint's allegations fail to suggest otherwise. As a result, Plaintiff's implausible conspiracy allegation cannot provide the connective tissue needed to properly join all the Defendants named here. Furthermore, this conclusion applies even after one removes this District from consideration as a Defendant.

9

avoid filings for which he should face PLRA-related requirements and consequences (e.g., filing fees). The Court thus concludes that the Complaint suffers from dispositive misjoinder issues.

Standing alone, perhaps these joinder problems would merely suggest requiring that Plaintiff file an amended complaint. But the misjoinder is particularly confounding because Courts in this District have warned Plaintiff at least three times that complaints like the present one run afoul of the Federal Rules. See, e.g., Jackson v. Schnell, No. 20-cv-1951 (BCW) Order [Docket No. 17] at 2–3 (D. Minn. Apr. 29, 2021) (explaining that pleading suffered from misjoinder); Jackson v. Walz, No. 19-cv-2612 (JNE/LIB) Report and Recommendation [Docket No. 15] at 5–6 (D. Minn. Feb. 19, 2020) (recommending dismissal of "kitchen-sink pleading"), report and recommendation adopted, 2020 WL 1442641, at *1 (D. Minn. Mar. 24, 2020); Jackson v. Dayton, No. 17-cv-0880 (WMW/TNL), 2018 WL 4473403, at *10 (D. Minn. Apr. 2, 2018), report and recommendation adopted, 2018 WL 3696600 (D. Minn. Aug. 3, 2018). Indeed, this Court's most-recent explanation of these joinder rules to Plaintiff occurred only approximately three months before he filed the present Complaint.

Consistent with Rule 8 of the Federal Rules of Civil Procedure, Courts in this District have "repeatedly criticized the filing of 'kitchen-sink' or 'shotgun' complaints—complaints in which a plaintiff brings every conceivable claim against every conceivable defendant." Gurman v. Metro Hous. And Redev. Auth., 842 F. Supp. 2d 1151, 1152 (D. Minn. 2011). More specific to the Plaintiff in the present case, Courts in this District have specifically informed Plaintiff himself of this Rule 8 standard, as well as, the restrictions on shotgun pleadings; at least two of Plaintiff's previous cases before this Court was dismissed on these grounds. See, Jackson v. Walz, No. 19-cv-2612 (JNE/LIB) Report and Recommendation [Docket No. 15] at 5–6 (D. Minn. Feb. 19, 2020) (recommending dismissal of "kitchen-sink pleading"), report and recommendation adopted, 2020

WL 1442641, at *1 (D. Minn. Mar. 24, 2020); Jackson v. Dayton, et al., No. 17-cv-880 (WMW/TNL) Report and Recommendation [Docket No. 108] (D. Minn. Mar. 19, 2018), report and recommendation adopted, Order [Docket No. 126] (D. Minn. Aug. 3, 2018).

In the present case, Plaintiff's "kitchen-sink" Complaint patently violates Rule 8. Plaintiff's Complaint is more than 90 pages long naming several unrelated Defendants, and it contains allegations regarding several unrelated sets of circumstances. Even liberally construing his Complaint in his favor, it is evident to this Court that Plaintiff's Complaint is merely a collection of all his grievances regarding unrelated issues. This failure alone, represents a sufficient, independent basis to dismiss the present action. See, e.g., Jackson v. Walz, No. 19-cv-2612 (JNE/LIB) Report and Recommendation [Docket No. 15] at 5–6 (D. Minn. Feb. 19, 2020) (recommending dismissal of "kitchen-sink pleading"), report and recommendation adopted, 2020 WL 1442641, at *1 (D. Minn. Mar. 24, 2020) (citing Jackson v. Dayton, et al., No. 17-cv-880 (WMW/TNL) Report and Recommendation [Docket No. 108] (D. Minn. Mar. 19, 2018), report and recommendation adopted, Order [Docket No. 126] (D. Minn. Aug. 3, 2018)). Plaintiff's kitchen-sink pleading cannot proceed before this Court because it fails to comply with Rule 8 and other applicable pleadings standards as discussed above.

Thus, based on all of the identified deficiencies, the Court finds it appropriate to recommend dismissal of this action. See, e.g., Fed. R. Civ. P. 41(b) (noting that involuntary dismissal is appropriate where "the plaintiff fails . . . to comply with these rules or a court order").[9] Based on this recommendation of dismissal, the undersigned further recommends that Plaintiff's pending Motions be denied as moot.

---

[9] While Rule 41(b) refers to involuntary dismissals occurring after a defendant's motion, the Eighth Circuit has made clear that a court may enter an involuntary dismissal sua sponte. See, e.g., Holly v. Anderson, 467 F.3d 1120, 1121 (8th Cir. 2006) (citing cases); Carlson v. Schnell, No. 20-cv-1676 (WMW/HB), 2021 WL 1381189, at *1 n.1 (D. Minn. Apr. 12, 2021) (citing Holly).

IV.   **Conclusion**

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's Complaint, [Docket No. 1], be **DISMISSED** as follows:

   a. Plaintiff's claims as alleged against Defendant "United States District Court, District of Minnesota" be **DISMISSED with prejudice**;

   b. Plaintiff's remaining claims as alleged against all other Defendants be **DISMISSED without prejudice**;

2. Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs, [Docket No. 3], be **DENIED as moot**;

3. Plaintiff's "Motion Asking the Court to [Issue an] Order Requiring the United States Marshal to Serve the Summons and Complaint," [Docket No. 5], be **DENIED as moot**;

4. Plaintiff's "Motion Requesting Documents be sent free of charge," [Docket No. 7], be **DENIED as moot**;

5. Plaintiff's "Motion for Appointment Counsel," [Docket No. 9], be **DENIED as moot**; and

6. Plaintiff's "Motion Requesting a Court Order That Adopts The Relation Back Amendments Regarding Previously Filed Or Prior Pleadings," [Docket No. 10], be **DENIED as moot**.

Dated: November 8, 2021

s/Leo I. Brisbois
Hon. Leo I. Brisbois
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. See, Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).